UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRADLEY S.,<br><br>                    Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>                    Defendant. | CASE NO. C18-0774-JCC-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner issued a partially favorable decision regarding plaintiff's applications for Child Disability Benefits, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED in part and REMANDED in part for an award of benefits.

///

REPORT AND RECOMMENDATION
PAGE - 1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1989.[1]  He attended special education classes and ultimately obtained his GED.  (AR 38, 119.)  He has no past relevant work.  (*See* AR 24, 441.)

Plaintiff filed his disability benefit applications in July 2014, alleging disability beginning at birth.  (AR 391, 398, 416.)  His applications were denied initially and on reconsideration.

ALJ Tom Morris held hearings on January 21, 2016 and March 21, 2017, taking testimony from plaintiff, plaintiff's father, and a vocational expert (VE) at the first hearing (AR 86-135), and from plaintiff, a VE, and a medical expert (ME) at the second hearing (AR 36-85).  On April 17, 2017, the ALJ issued a decision finding plaintiff disabled from April 1, 2011 through June 30, 2011, but not disabled as of and since July 1, 2014.  (AR 15-25.)[2]

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on April 12, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  At step two, it must be determined whether a claimant suffers from a severe impairment.  Step three asks whether a claimant's

---

[1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

[2] The period begins with plaintiff's "date first insured." (AR 139.)  Also, given the July 2014 application filing dates, plaintiff would not be eligible to receive retroactive payments prior to July 2013, twelve months prior to the application dates of his Title II and child disability claim.  (AR 15, n.1.)

REPORT AND RECOMMENDATION
PAGE - 2

impairments meet or equal a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.

The same definition of disability and five-step sequential evaluation process also governs eligibility for disabled child's insurance benefits. *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(1)-(2). In order to qualify for such benefits several criteria must be met. § 404.350(a)(1)-(5). As relevant here, if the claimant is over age eighteen, he must have a disability that began before attainment of age twenty-two. § 404.350(a)(5).

If a claimant is found disabled at any point in the sequential evaluation process, the Commissioner must determine whether the disability continued through the date of the decision, following an eight-step evaluation process. *See* § 404.1594(f)(1)-(8). This process is similar to the five-step sequential evaluation, with additional questions on whether there has been medical improvement and whether the medical improvement is related to the ability to work. *Compare* § 404.1520, *with* § 404.1594(f).

Under the eight-step continuing disability process, the ALJ must first determine whether the claimant is engaging in substantial gainful activity. If not, at step two, the ALJ must determine whether the claimant's impairments or combination of impairments meet or medically equal the severity of a listed impairment. Step three asks whether there has been medical improvement as shown by a decrease in medical severity. If there has been medical improvement, at step four, the ALJ must determine whether the medical improvement is related to the ability to work. If there

has been no medical improvement or the medical improvement is not related to the ability to work, at step five, the ALJ must examine whether certain exceptions in paragraphs (d) and (e) to 20 C.F.R. § 404.1594 apply. If medical improvement is related to the ability to work or if one of the exceptions in paragraph (d) applies, at step six, the ALJ must determine whether all of the claimant's current impairments in combination are severe. If severe, the ALJ must assess RFC and determine at step seven whether the claimant has demonstrated an inability to perform past relevant work. If the claimant is unable to perform past relevant work, the ALJ must determine at step eight whether, given the RFC and considering age, education, and past work experience, other work can be performed.

In this case, the ALJ found plaintiff had attained age twenty-two as of April 1, 2011, and had not engaged in substantial gainful activity as of that date. The ALJ found, from April 1, 2011 through June 30, 2014, plaintiff had the following severe impairments: Asperger's disorder; avoidant personality disorder; anxiety disorder; attention deficit hyperactivity disorder (ADHD); depression; social anxiety disorder; and math disorder. The ALJ further found, for that same time period, the severity of plaintiff's impairments met the criteria of Listing 12.06 (anxiety and obsessive-compulsive disorders). The ALJ therefore found plaintiff was under a disability from April 1, 2011 through June 30, 2014.

The ALJ thereafter conducted the continuing disability analysis. The ALJ found plaintiff had not developed any new impairments since July 1, 2014, the date his disability ended, and that his current severe impairments are the same as those present during the period of disability. The ALJ found, beginning July 1, 2014, plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ found medical improvement occurred as of July 1, 2014, and that that improvement is related to the

ability to work because plaintiff no longer has an impairment or combination of impairments that meets or equals the severity of a listing.

The ALJ further found, beginning July 1, 2014, plaintiff had the RFC to perform a full range of all exertional levels of work, but with non-exertional limitations. Plaintiff is limited to unskilled tasks up to two steps, with superficial interaction with co-workers and no direct contact with the public. He can have superficial contact with the public. He can adapt to no more than occasional changes in the work environment. The work should have an emphasis on things rather than people, and plaintiff would be off task for about five percent of every work day. Plaintiff had no past relevant work.

The ALJ next found, beginning July 1, 2014, jobs existed in significant numbers that plaintiff could perform, such as work as a factory helper, window cleaner, and machine feeder. The ALJ therefore concluded plaintiff's disability ended July 1, 2014, and he had not become disabled again since that date.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to properly weigh and credit medical opinions of record and erroneously found medical improvement and no disability as of July 1, 2014. He argues the ALJ failed to properly consider the medical and testimonial evidence in assessing his RFC as of July 1, 2014, and that the step five finding as of that date is not supported by competent, substantial VE evidence. Plaintiff requests remand with a modification of the decision to find his disability did not end as of July 1, 2014, and that he continues to be disabled based on the substantial evidence of record. Alternatively, plaintiff requests remand for reconsideration of the evidence, re-assessment of whether his impairments continued at listing level severity as of July 1, 2014, and, if not, reconsideration of his RFC from that point forward, with new VE testimony and a new step five conclusion.

The Commissioner concedes the ALJ erred in evaluating whether plaintiff's conditions medically improved, whether his impairments meet or equal a listing, and the medical opinion evidence, and that, because of those errors, substantial evidence does not support the evaluation of plaintiff's RFC, symptom testimony, lay witness evidence, and ability to perform other work. The Commissioner maintains an award of benefits is not warranted because the ALJ's entire decision – including the finding of disability for a closed period – is not supported.

<u>Remand Standard</u>

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). *Accord Leon v. Berryhill*, 874 F.3d 1130, 1044 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception

to the well-established ordinary remand rule.")

Before remanding for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must determine whether any outstanding issues must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. *Leon*, 880 F.3d at 1045; *Treichler*, 775 F.3d at 1101. Third, with the first two conditions satisfied, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). *Accord Leon*, 880 F.3d at 1045 ("When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record as a whole, there is no doubt as to disability."); *Treichler*, 775 F.3d at 1101 (the Court asks whether the record leaves not the slightest uncertainty as to the outcome).

Even with satisfaction of the three requirements, the Court retains flexibility in determining the proper remedy. *Brown-Hunter*, 806 F.3d at 495. The Court may remand for further proceedings where the record, considered as a whole, creates serious doubt as to whether a claimant is disabled. *Id*. If the record is uncertain and ambiguous as to disability, the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

<u>ALJ's Decision</u>

In finding plaintiff disabled from April 1, 2011 through June 30, 2014, the ALJ gave great weight to the opinion of testifying ME Nathan Strahl, MD, Ph.D. (AR 20.) Dr. Strahl opined plaintiff met the criteria for Listing 12.06 from April 2011 through mid-2014, with marked

REPORT AND RECOMMENDATION
PAGE - 7

limitations in interacting with others, and moderate-to-marked limitations in concentrating, persisting, or maintaining pace and in adapting or managing oneself. (AR 61-63, 74.) Dr. Strahl pointed to the in-depth assessment conducted by examining psychologist Dr. Kevin O'Keefe in 2006, wherein plaintiff reported extensive difficulty with appropriate social interaction, irritability, and sustained attention, testing showed significant difficulties with cognitive function, and plaintiff was socially awkward and exhibited notable deficits in his knowledge of social conventions and behavior. (AR 20, 689-711.) Dr. Strahl also pointed to the January 2013 psychological evaluation by Dr. Kerry Bartlett, with testing indicating significant limitations due to attentional concerns, distractibility, and severe social anxiety. (AR 20, 926-32.) The ALJ found school records consistent with plaintiff's reporting and with Dr. Strahl's opinion, and reflecting significant problems with math, sustained attention, and appropriate social interaction. (AR 20, 815-924.) The ALJ noted Dr. Strahl was the only doctor to review the entire record, his reliance on supportive evidence, and his expertise as a psychiatrist.

The ALJ gave some weight to the opinions of Dr. O'Keefe, Dr. Bartlett, and a September 2013 opinion of Dr. Thang Do (AR 667-85). (AR 21.) These "examining psychologists" had not reviewed the entire record, as did Dr. Strahl, "but their assessments seem consistent with their findings and with the record in general." (*Id.*) The ALJ gave less weight to the opinions of State agency psychological consultants regarding the period prior to July 1, 2014, finding Dr. Strahl's opinion more consistent with the record as a whole.

Beginning July 1, 2014, the ALJ found plaintiff had only moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (AR 21.) Dr. Strahl opined as such, and the ALJ found the opinion consistent with the medical record. In this portion of the step three finding and at step four, the ALJ described the

treatment records (*see* AR 1214-31, 1235-1312) as supporting his conclusion. That is, while reflecting plaintiff's report of ongoing problems with significant anxiety, concentration, interaction with others, and intermittent suicidal ideation, the records also showed the ability to engage with providers, typically cooperative behavior, compliance with treatment, reduction in anxiety and other symptoms, and better control of emotions; that he was reading again, with some improved concentration, the ability to communicate better with his parents, do things he had not been able to do for a long time, and reaching out more to friends; and his reporting of overall improvement and providers' indication of overall positive progress. (AR 21-23.) Mental status examination (MSE) findings showed intermittent presentation with abnormalities in affect or speech, but were otherwise unremarkable, most records reflected little obvious problem with concentration, and plaintiff usually presented with unremarkable grooming and hygiene. (AR 22-23.) In 2016, plaintiff was informed he would have to move out in the near future because his father was getting married and, while not happy, seemed able to manage the situation. In early 2017, plaintiff had few concerns about moving out apart from having to interact more with people, and felt his medications were working.

For this later period of time, the ALJ gave the most weight to and adopted Dr. Strahl's opinion plaintiff had only mild and moderate limitations, would be able to work in a job with simple, routine, one-to-two step commands, with an adequate ability to interact with supervisors, only occasional contact with co-workers and superficial contact with the public, and engaging in mostly independent work activity. (AR 23.) He again pointed to Dr. Strahl's expertise, review of the entire record, and the treatment notes supporting the opinion.

The ALJ gave less weight to the opinions of the State agency psychological consultants and to the opinion of Dr. Nahid Markosian. Dr. Markosian conducted a neuropsychological

REPORT AND RECOMMENDATION
PAGE - 9

evaluation in February 2015. (AR 938-47.)  Unlike Dr. Strahl, the opinions of Dr. Markosian and the non-examining psychologists did not reflect a comprehensive review of the entire record.  (AR 23.)  Also, Dr. Markosian's indication of "'disabling'" anxiety was a legal conclusion reserved to the Commissioner, not a medical opinion.  (*Id*.)  Finally, the statements of both plaintiff and his father generally reflected the same allegations and were partially consistent with the overall record.

<u>Application of Remand Standard</u>

The Commissioner concedes numerous errors throughout the ALJ's decision, but maintains further proceedings are necessary to determine whether plaintiff was disabled at any time and, if so, the definitive dates of disability.  The Commissioner identifies specific outstanding issues as including the need to address the October 2015 opinion of Dr. Do, which the ALJ did not consider, but is contradicted by the opinion of Dr. Strahl.  The Commissioner identifies another outstanding issue as the question of whether the ALJ properly found plaintiff disabled for a closed period.  She contends the ALJ mischaracterized Dr. Strahl's testimony because the ME did not provide any testimony regarding the "paragraph A" criteria of Listing 12.06, and by stating Dr. Strahl assessed marked, rather than moderate-to-marked limitations in two of the "paragraph B" criteria.  She also describes Dr. Strahl's opinion as unclear and equivocal as to a definitive end date of disability given his testimony plaintiff no longer met a listing in the "middle of 2014" but that "if someone argued the beginning of 2015 upwards, I would not argue with that."  (AR 75.)  She avers further evaluation is necessary to determine disability and its beginning and end dates.  *See* Program Operations Manual System (POMS) DI 25510.001(B)(1) (to establish a closed period of disability, the evidence must show the onset date, satisfaction of the duration requirement, and the date disability ceased).  The Commissioner contends these discrepancies and evidentiary conflicts preclude application of the "credit-as-true" rule and require further evaluation of step

REPORT AND RECOMMENDATION
PAGE - 10

three and the medical opinion evidence, and possibly record development and additional ME testimony, making further proceedings useful and necessary to reach a conclusion. The Court disagrees.

There are no outstanding issues as to plaintiff's satisfaction of either the "paragraph A" or "paragraph B" criteria of Listing 12.06 for the closed period of disability. The ALJ found satisfaction of the A criteria because plaintiff had restlessness, difficulty concentrating, irritability, and sleep disturbance. (AR 20.) This finding was appropriately based on documentation of the criteria in the medical evidence, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A)(2)(a) and 12.06(A), and was implicit in Dr. Strahl's testimony as to the "objective record" support for Listing 12.06, among other listings, prior to his discussion of the B criteria (*see* AR 48, 58-61). The ALJ did not mischaracterize the testimony of Dr. Strahl as reflecting marked limitations in three of the B criteria; he accurately described the testimony as identifying marked limitations in interacting with others and moderate-to-marked limitations in concentrating, persisting, or maintaining pace and in adapting or managing oneself. (AR 20.) Nor did Dr. Strahl's opinion of moderate-to-marked limitations undermine the ALJ's conclusion the evidence supported satisfaction of the B criteria with marked limitations in three functional areas. Dr. Strahl opined plaintiff satisfied the B criteria for the listing. (AR 74.) Further, and as reflected in the decision, the ALJ reached this conclusion based not only on the testimony of Dr. Strahl, but also with consideration of evidence from Drs. O'Keefe, Bartlett, and Do, plaintiff's school records, plaintiff's reports, and the medical record as a whole. (*See* AR 19-21.)

The Court further disagrees the lack of a specific end date to the closed period in Dr. Strahl's testimony necessitates further administrative proceedings. Dr. Strahl testified that, from April 2011 "to the middle of 2014", plaintiff had marked and moderate-to-marked limitations in

REPORT AND RECOMMENDATION
PAGE - 11

three of the B criteria (AR 62-63) and that, with the combination of his Asperger's, dysthymic, anxiety, and attention deficit/hyperactivity disorders, he "would meet a listing" for that time period, "most likely, 12.06." (AR 74). The ALJ, consistent with this testimony, established at the time of the adjudication of this matter the end date for the closed period of disability as June 30, 2014. The Commissioner does not demonstrate an absence of substantial evidence to support the ALJ's conclusion. *See* POMS DI 25510.001(A) ("A closed period of disability is the period of disability with a definite beginning date and a definite ending date that the adjudicator establishes at the time of adjudication.").

Moreover, to the extent Dr. Strahl's testimony regarding the end date lacked clarity, the ambiguity, if anything, argued in favor of a longer closed period of disability. When counsel for plaintiff asked for clarification on whether Dr. Strahl found plaintiff did not equal the listing after June 2014, the ME responded: "Somewhere in that range. . . . There is a range of dates, 2014 to 2015. I tested in the middle of 2014, but if someone argued the beginning of 2015 upwards, I would not argue with that." (AR 74-75; *see also* AR 77 (". . . and so that's where I'm telling you, basically, that one can look as [sic] an earlier time frame or a later time frame and I've basically divided those two dates up and they're right in the middle. . . . I would not argue that that date could be later in time as well.")) He further testified that, while he did not construe the evidence after June 2014 to support a conclusion plaintiff equaled the listing, it could be argued that "vocationally it might be difficult" for plaintiff with the "very severe limitations" Dr. Strahl identified as applying after that date. (AR 75-76.) This testimony supports, rather than detracts from the finding of a closed period of disability at least as of the end of June 2014.

The Court also disagrees with the Commissioner that an unresolved conflict between the unaddressed October 2015 opinion of Dr. Do and the testimony of Dr. Strahl precludes either

REPORT AND RECOMMENDATION
PAGE - 12

crediting the opinion of Dr. Do as true or an award of benefits.  In his October 2015 report, Dr. Do described his treatment and concluded, based on his professional experience, review of prior records, and clinical findings and observations, plaintiff "would not be able to meet the normal demands for performance and attendance associated with all work, including simple work away from the general public; now or at any time in which I have treated him." (AR 1212.)  Plaintiff's "severe lack of motivation would cause him to be absent or greatly tardy to work multiple times per month[,]" and his "severe anxiety, attention deficit disorder, social phobia and avoidant personality disorder . . . would prevent him from seeking and maintaining employment." (*Id*.) "His anxiety, poor focus, disorganized thought process, impaired judgement and impaired attention would severely restrict his ability to work." (*Id*.)  Plaintiff has markedly impaired social functioning, "in that he isolates frequently, and has only one friend, and has frequent conflict with family." (*Id*.)  If plaintiff could obtain work, it would need to be performed alone, without anyone around him, and it was questionable "whether he could get along with even a single supervisor." (*Id*.)  Plaintiff has a moderate-to-marked level of impairment in concentration, persistence, and pace, evidenced by his frequent inability to follow through with necessary tasks and appointments, despite encouragement from his father, Dr. Do, and the Division of Vocational Rehabilitation. (AR 1212-13.)  Dr. Do also discussed plaintiff's lack of insight and awareness into his condition, shifting self-awareness, and/or attempts to rationalize away his deficits, signs, and symptoms, possibly attributable to his personality disorder, evidenced by his failure to attempt additional medications due to previously experienced side effects, and resulting in conflict with others, increased anxiety, and treatment avoidance. (AR 1213.)

There is no dispute the ALJ erred in failing to acknowledge and address Dr. Do's 2015 report.  The ALJ also, when addressing Dr. Do's 2013 report, erred in characterizing this provider

REPORT AND RECOMMENDATION
PAGE - 13

as an examining psychologist, rather than a treating psychiatrist. (*See* AR 21.) The Court further concludes there is no outstanding issue requiring additional consideration of the opinion evidence from Drs. Do and Strahl, and that there is ample support for both crediting Dr. Do's opinions as true and remanding this matter for an award of benefits.

As a treating doctor, Dr. Do's opinions are, as a general matter, entitled to more weight than the opinions of the non-examining ME. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (in general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor). Dr. Do's status as a treating psychiatrist, the fact he offered an opinion in his area of expertise, and his inclusion of that opinion in his most recent medical report bolster the weight properly accorded his opinion. *See generally* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (discussing relevance of opinions offered in area of specialization); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (same), and *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative.").

Numerous other factors warrant the assignment of greater weight to the opinions of this treating psychiatrist over the opinion of the non-examining ME. Dr. Do provided more than two years of treatment, comprised of fourteen consultations between September 2013 and October 2015. 20 C.F.R. §§ 404.1527 (c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii) (the longer a treating source has treated you, the more times you have been seen by a treating source, and the more knowledge a treating source has about your impairments, the more weight will be given to that source's opinion). His report reflects his familiarity with other evidence in the record, including the reports of Drs. Bartlett and Markosian, treatment provided by James Harle, M.D., and testing conducted by Matthew J. Hoag, Ph.D., as well as his interactions during treatment with both plaintiff and

REPORT AND RECOMMENDATION
PAGE - 14

plaintiff's father. §§ 404.1527(c)(6), 416.927(c)(6) (the extent to which a medical source is familiar with other information in the case record is a relevant factor). Dr. Do's most recent eight-page, narrative report provides a detailed description of the treatment provided, evidence relied upon, and explanations for his opinions. §§ 404.1527(c)(3), 416.927(c)(3) (the more relevant evidence and the better an explanation provided in support of an opinion, the more weight the opinion will be given).

In addition, the content of Dr. Do's report extends well beyond mid-2014. For example, in October 2014, plaintiff continued to isolate, had no meaningful social interactions or local friends, became angry and reacted strongly and negatively when asked about how he feels, exhibited very odd social interactions, and demonstrated a lack of insight with his inability to verbalize why he was unable to work or make any effective change. (AR 1208.) In November 2014, he remained fearful of leaving his room due to increased anxiety and panic, was unable to be effective in any practical way, had very poor focus and concentration, and was grossly disorganized, depressed, and with an odd style of dress. (AR 1208-09.) The following month, he remained without any effective involvement or social interactions, described depressive episodes every one-to-two weeks, lasting one-to-seven days, and continued to refuse medication. (AR 1209.) His symptoms and refusal to medicate continued in January and February 2015, and Dr. Do noted poor social processing and empathy, odd beliefs and thought processes, and "could not fully rule out schizotypal." (AR 1209-11.) In March and April 2015, plaintiff's father reported distractibility and poor focus, concentration, and organization, while plaintiff reported very high anxiety daily, with surges of panic, and ongoing depression. (AR 1211-12.) By May 2015, plaintiff no longer had effective communication with his father, had anxiety and depression interfering with his ability to make effective decisions and very poor energy and motivation, and

REPORT AND RECOMMENDATION
PAGE - 15

continued to refuse medication.  (AR 1212.)  Dr. Do, throughout this treatment, found plaintiff impaired in numerous respects on MSE.  (*See* AR 1208-12.)  There is, as such, consistency between Dr. Do's observations and findings in treatment, and his opinions as to plaintiff's limitations.  *See generally* §§ 404.1527(c)(4), 416.927(c)(4) (the more consistent an opinion is with the record as a whole, the more weight will be given to the opinion).

        The ALJ's errors in the consideration of medical opinion evidence were not, moreover, limited to Dr. Do.  For example, Dr. Markosian described notable difficulty with attention and concentration, at times affecting the ability to learn new material, average intellectual functioning, with significant strengths on tasks not requiring working memory "(which is a type of attention)" and processing speed, and that plaintiff "experiences a disabling amount of anxiety."  (AR 945.)  She identified severe symptoms of ADHD and anxiety, persistent through time, and not responding easily to treatment, and plaintiff's ability to sustain focus and attention as an area of significant weakness, exacerbated by anxiety, eroding confidence in his abilities and "contribut[ing] to a negative cycle of anxiety and disability."  (AR 946.)

        The ALJ failed to adequately address this opinion evidence.  Dr. Markosian, unlike Dr. Strahl, examined plaintiff.  Dr. Markosian is a clinical neuropsychologist, offered an opinion in her area of expertise, and rendered that opinion in February 2015, during the period of non-disability identified by the ALJ.  While favoring the opinion of Dr. Strahl given his comprehensive review of the record, the ALJ did not acknowledge Dr. Markosian's review of records relating to treatment plaintiff received in middle and high school and provided by both Dr. Harle and Dr. Do, or the fact Dr. Markosian interviewed both plaintiff and plaintiff's father.  (AR 939, 941.)  Also, while taking issue with Dr. Markosian's identification of "disabling" anxiety, the ALJ failed to address any other observations, findings, or conclusions in her report.

REPORT AND RECOMMENDATION
PAGE - 16

The mere fact the improperly discredited opinions conflict at least in part with those of Dr. Strahl does not preclude crediting the opinions as true. *See, e.g., Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (crediting treating doctor's opinion as true despite contradictory opinion of non-examining doctor). *See also Lester*, 81 F.3d at 830-34 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'") (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Nor does the Court find remand necessary to allow for consideration of this conflict. Instead, considering the record as a whole, the Court finds substantial evidence support for a finding of disability beyond mid-2014.

For example, in addition to conceding plaintiff arguably met a listing into 2015, Dr. Strahl acknowledged "very severe" limitations and vocational impact existing beyond mid-2014. (AR 76.) While more recent treatment notes reflected some measure of improvement, providers were "still in the adjustment phase[,]" juggling and trying out different medicines through November 2015, and did not appear to be done with medication management. (AR 72 ("There's a first time he's really been on minimal to successive treatment and therefore, by showing some fruits of that, I think there's more phases to go . . . more likely to improve as time goes on."))[3]

Dr. Strahl also, for the period after mid-2014, assessed limitations in excess of those in the RFC, including a limitation to interacting with supervisors or co-workers for no more than twenty-five percent of the work day. (*See* AR 65-66 (Dr. Strahl testified plaintiff could perform simple, routine, repetitive tasks, one-to-two step commands, was "capable of working with supervisors

---

[3] Plaintiff provides documentation showing he has, in fact, been found disabled as of an SSI application filed in August 2018. (Dkt. 12 at 9 and Ex. 1.) However, this information is dated after and therefore not included in the record in this case.

REPORT AND RECOMMENDATION
PAGE - 17

adequately, no more than 25 percent accessibility to – what is occasional, which is up to 32 percent[,]" and "occasional at 25 percent ranking level to work with coworkers and only superficial with the public[,]" and able to "function at a simple, routine, repetitive level requires him to have almost exclusively but not quite exclusively independent work activities."); *see also* AR 76 (". . . I gave . . . working with supervisors, which would be minimal contact and . . . , and then only normal to 25 percent interaction with coworkers").)  The ALJ did not provide any reason for rejecting limitations as stated by Dr. Strahl, and included no limitations whatsoever in relation to supervisor interaction.[4]  This error, among the many other errors identified herein and otherwise conceded by the Commissioner, provides further support for the conclusion the ALJ's decision lacks the support of substantial evidence and that the ALJ would be required to find plaintiff disabled if improperly discredited evidence were credited as true on remand.  *See* Social Security Ruling 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.")

This case, in sum, offers the rare circumstance in which a remand for an award of benefits is warranted.  That is, crediting the improperly discredited medical opinions and testimony as true,

---

[4] As stated above, the ALJ found plaintiff limited to unskilled tasks of up to two steps, superficial interaction with co-workers and the public, but no direct public contact, no more than occasional changes in the work environment, work with an emphasis on things, rather than people, and off task five percent of the workday.  (AR 22, 79-81.)

and considering the record as a whole, the Court finds no uncertainty, ambiguity, or doubt as to disability existing before and extending beyond June 30, 2014.

## CONCLUSION

This matter should be AFFIRMED in part and REMANDED in part. Specifically, on remand, the disability finding between April 1, 2011 and June 30, 2014 should be affirmed and an award of benefits should be granted for the period beginning July 1, 2014.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 29, 2019**.

DATED this 8th day of March, 2019.

Mary Alice Theiler
United States Magistrate Judge